ACCEPTED
01-14-00597-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
7/28/2015 10:32:03 PM
CHRISTOPHER PRINE
CLERK

## NO. 01-14-00597-CR

**IN THE COURT OF APPEALS
FOR THE FIRST DISTRICT OF TEXAS
AT HOUSTON**

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
7/28/2015 10:32:03 PM
CHRISTOPHER A. PRINE
Clerk

**JODY WAYNE WHELCHEL,
Appellant**

**VS.**

**THE STATE OF TEXAS,
Appellee**

**Trial Court No. 12-DCR-059468**

**Appeal from the 400th Judicial District**

**Fort Bend County, Texas**

## BRIEF FOR APPELLANT

Dawn Zell Wright
ZELL WRIGHT LAW OFFICES, PLLC
State Bar No. 24033498
812 Barrett Street
Richmond, Texas 77469
Phone: (832) 701-5297
Fax: (888) 897-3001

ATTORNEY FOR APPELLANT

## ORAL ARGUMENT REQUESTED

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to TEX. R. APP. P. 9.4(g) and TEX. R. APP. P. 39.1, appellant requests oral argument.

## IDENTIFICATION OF THE PARTIES

Pursuant to TEX. R. APP. P. 38.2(a)(1)(A), a complete list of the names of all interested parties is provided below.

**APPELLANT or CRIMINAL DEFENDANT:**   Mr. Jody Wayne Whelchel

**DEFENSE COUNSEL AT TRIAL:**
Mr. Baltazar Salazar
8814 Brae Acres
Houston, Texas  77074-4108

**APPELLANT'S ATTORNEYS ON APPEAL:**
Ms. Dawn Zell Wright
812 Barrett Street
Richmond, Texas 77469

**STATE'S ATTORNEYS:**
Mr. John F. Healey, Jr.
District Attorney (DA)

Mr. John Harrity
Assistant DA on appeal

Mr. Rodolfo Ramirez
Ms. Tyra Jones McCollum
Assistant DAs at trial
Fort Bend County Das Office
301 Jackson Street
Richmond, Texas  77469

**TRIAL JUDGE:**   The Honorable Clifford Vacek

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ............................................. ii

IDENTIFCIATION OF THE PARTIES ................................................. ii

TABLE OF AUTHORITIES ...................................................................iv

STATEMENT OF THE CASE ....................................................................1

ISSUES PRESENTED....................................................................................2

STATEMENT OF FACTS ............................................................................2

ARGUMENT AND AUTHORITIES .........................................................8

APPELLANT'S FIRST POINT OF ERROR (Restated) ........................8

APPELLANT'S SECOND POINT OF ERROR (Restated) ................13

CONCLUSION ..........................................................................................16

CERTIFICATE OF SERVICE.................................................................17

# TABLE OF AUTHORITIES

**CASES**

*Brooks v. State, 323 S.W.3d 893 (Tex.Crim.App. 2010)*.......................................................9

*Chambers v. State*, 711 S.W.2d 240, 245 (Tex. Crim. App. 1986)....................................8

*Clark v. Procunier*, 755 F.2d 394, 396 (5th Cir. 1985)...............................................10, 12

*Coble v. State*, 330 S.W.3d 253, 281 (Tex. Crim. App. 2010) .........................................14

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595, 113 S. Ct. 2786......................14

*Draper v. United States*, 358 .S. 307, 323-324 (1959) ......................................................11

*Gold v. State*, 736 S.W.2d 685 (Tex. Crim. App. 1987)................................................11

*Griffin v. State*, 614 S.W.2d 155 (Tex.Crim.App. 1981) ...................................................9

*In re Winship*, 297 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)..........................11

*JACKSON V. VIRGINIA,*
    443 U.S. 307 (1979) ...................................................................................................12

*Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2879, 62 L.Ed.2d 560 (1979) ......8

*Kelly v. State*, 824 S.W.2d 568, 576 (Tex. Crim. App. 1992)...........................................15

*King v. State,* 953 S.W.2d 266, 271 (Tex. Crim. App. 1997)............................................16

*MORENO V. STATE,*
    755 S.W.2D 866 (TEX. CRIM. APP. 1988) .......................................................................12

*Motilla v. State,* 78 S.W.3d 352, 355 (Tex. Crim. App. 2002)..........................................16

*Richardson v. State*, 879 S.W.2d 874 (Tex. Crim. App. 1993)..................................11

*Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 318 (7th Cir. 1996) ........................................14

*Texas Employers Ins. Ass'n v. Goad*, 622 S.W.2d 477, 480 (Tex. App. — Tyler 1981, *no writ*)..........................................................................................................................10

*TIBBS V. FLORIDA,*
    457 U.S. 31 (1982 ......................................................................................................12

*United States v. D'Amato*, 39 F.3d 1249, 1256 (2nd Cir. 1994)................................10

*United States v. Moreno*, 185 F.3d 465, 471 (5th Cir. 1999) *cert. denied*, 528 U.S. 1095 (2000)..................................................................................................................10

*Weaver v. State,* 855 S.W.2d 116, 119-20 (Tex. App.-Houston [14th Dist.] 1993)...........17

*Weaver v. State*, 96 Tex.Crim. 506, 258 S.W. 171 (1924) ...............................................10

**RULES**

TEX. R. APP. P. 38.2(a)(1)(A) ............................................................. ii

TEX. R. APP. P. 39.1 ........................................................................ ii

TEX. R. APP. P. 9.4(g) ...................................................................... ii

TEX. R. APP. P. 44.2(b) .....................................................................11

TEX. R. Evidence 504(a) ...................................................................12

NO. 01-14-00597-CR

IN THE COURT OF APPEALS

FOR THE FIRST DISTRICT OF TEXAS

---

JODY WAYNE WHELCHEL,
APPELLANT

VS

THE STATE OF TEXAS,
APPELLEE

---

APPEAL FROM CAUSE NUMBER 12-DCR-059468
IN THE 400th JUDICIAL DISTRICT OF FORT BEND COUNTY, TEXAS

---

APPELLANT'S BRIEF

---

TO THE HONORABLE COURT OF APPEALS

This brief is filed on behalf of the Applicant, Jody Wayne Whelchel, by Dawn Zell Wright, his counsel.

## STATEMENT OF THE CASE

Appellant was charged by indictment with arson. (CR 11). In March 2014, a jury trial commenced (CR 254), which resulted a deadlocked jury with 11finding

guilty and 1 finding not guilty. (CR 285-260). The State re-prosecuted the case and a second jury trial was had on May 13, 15 and 16 and June 27, 2014. (RR I 1). The jury convicted appellant of the charged offense (CR 376) and Judge Clifford Vacek sentenced him to 10 years confinement in the Institutional Division of the Texas Department of Criminal Justice. (CR 394; RR V 6). This appeal follows.

## ISSUES PRESENTED

**Issue I**:

Whether a finding of guilt in an arson case constitutes error when the evidence is legally insufficient because it does not rise to the level of scientific reliability necessitated by the use of valid scientific methodology.

**Issue II**:

Whether a wife can be forced to testify against her husband under the victim's exception to the spousal privilege rule when the damaged property in question is their joint property, thereby rendering the trial court's denial of the defendant's Motion to Invoke Spousal Privilege error.

## STATEMENT OF FACTS

On January 18, 2012, Jody Wayne Whelchel called 911, twice. (RR IV 72). His house, the home he shared with his wife and children, was on fire. (RR III 72-73; RR III 97).

2

Five years earlier, in January 2007, Jody and Dondee, the woman he was marrying, together decided to buy the house located at 7018 Sundance Meadows. (RR III 51 and 74). They had already been living together as husband and wife before buying the house (RR III 72), and since her credit was better than his, the house was bought in Dondee's name. (RR III 73). They married that April (RR III 74), and had two children together (RR III 31). While Dondee was the primary bread earner, Jody economically contributed to the household (RR III 85-87) and made improvements to their home. (RR III 75).

But their marriage was failing and in 2010 Dondee filed for divorce (RR III 33). Over the next two years, they tried working on their marriage. (RR III 33). On the day of the fire, though they had been arguing and she wanted him to move out, they were still married and still living together in the home they shared. (RR III 44 and 82). In addition to marriage problems, the mortgage on their house was being foreclosed. (RR III 77).

At the time of the fire, they still shared a marital bed. (RR III 56). After he was arrested for arson, Dondee bailed her husband out of jail and they continued working on their marriage (RR III 78-79), but they ultimately divorced later in 2012 (RR III 33).

The State indicted Jody for arson, and filed the indictment with the Fort Bend County District Court on February 6, 2012. (CR 11). Jody was found to be

3

an indigent defendant and, on March 19, 2012, was appointed attorney Eduardo Cortez to represent him. (CR 13). On May 24, 2012, attorney Matthew Curl was appointed to substitute Cortez as Defendant's attorney. (CR 30). Mr. Curl filed a pretrial motion requesting a Daubert/Kelly hearing on proposed expert testimony was filed with the clerk on May 31, 2013. The motion challenged the reliability of the Arson Investigation Evidence and expert witnesses proffered by the State to support the arson Investigation Evidence. (CR 65). Also on May 31, 2013, Baltazar Salazar was appointed as Defendant's attorney. (CR 68). The record is silent as to whether a Daubert/Kelly hearing was held.

The case against Jody Whelchel was retried on May 13, 15 and 16 and June 27, 2014. (RR I 1). On May 13, after the jurors had been empaneled and released for the day, Jody Whelchel, by and through his attorney, invoked his spousal privilege. (CR 319 and RR II 147). After a brief discussion about whether the State could order Mrs. Dondee Whelchel to testify under subpoena, Judge Vacek overruled Defendant's motion, reasoning that while the defendant may have a community interest in the property that is the subject matter of the arson case, so did the defendant's wife and, therefore, the wife fell into the victim-exception to the spousal privilege rule. (RR III 10).

As its first witness in its case-in-chief, the State called Jody's wife, Dondee Whelchel to testify. She did not testify voluntarily and only testified because she

4

as subpoenaed and threatened by the State that if she did not respond to the subpoena then a warrant for her arrest would be issued. (RR III 69-71).

According to Dondee's testimony, Jody and his wife had been arguing on the morning of January 18, 2012. (RR III 82). She wanted him out of the house. (RR III 44). She further testified that when she told her husband to leave, he told her that "he's not leaving the home, that he would burn the fucking house down." (RR III 44). That morning she left to take their children to daycare and then go to work. (RR III 46). When she arrived at work, her husband kept calling her but she refused to take his call. (RR III 46-47). According to her testimony, Dondee finally answered her husband's call that morning, and they continued to argue. She testified that conversation kept escalating, that they both got "more angry" and that her husband "said he was going to burn the house down." (RR III 49). She then testified that her husband called her back later and told her "the house is on fire." (RR III 50). She further testified that she called the fire marshal and informed them of her husband's statements. (RR III 52).

Next, the State called Aldo Ramos, firefighter with Community Fire Department and first responder to the call. (RR III 95). Firefighter Ramos testified that he did not know what the cause of the fire was. (RR III 103). Then the State called Kent Rammrath, who, on the day of the call, was a captain with the Community Volunteer Fire Department and the initial fire inspector on the scene.

5

(RR III 104). Captain Rammrath testified that after inspecting the scene, he found the fire cause or source of the fire to be undetermined. (RR III 132-134). Captain Rammrath called in a fire investigator. (RR III 133).

Fire Marshall Matt Cornell was the State's next witness. At the time of the incident, Cornell was a senior fire investigator with Fort Bend County. (RR III 161). Cornell testified that, with regards to fire investigation, they follow the National Fire Protection Standard 921. (RR III 171). Cornell testified that, based on his visual inspection, he determined there to be two points of origin, and that two points of origin does not necessarily mean the fire is incendiary. (RR III 181-182). He testified that, after visually inspecting the light fixture, he determined the fire was not started by the fixture. (RR III 184, 201). He further testified that, based on his visual inspection, he determined that neither the wiring nor switches caused the fire. (RR III 187-188). Based on his visual inspection, he determined that electrical issues did not cause the fire. (RR III 138). Samples were taken from the locations Cornell determined to be the points of origin, and the lab tests were negative for accelerants. (RR III 191-192). Based on his visual inspection, Cornell did not "feel the need to proceed for further testing." (RR III 201). Based on his visual inspection, Cornell concluded that the fire was an incendiary fire started by Jody Whelchel "for spite and revenge." (RR III 213).

Jeff Brownson was called by the State as its next witness. (RR III 255). Brownson, a fire inspector and arson investigator with the Fort Bend County Fire Marshall's Office, testified that based on his visual inspection, there was no need to test anything to prove his hypothesis because he used skilled observation while walking around as his scientific method. (RR III 278-279). Further Brownson testified that he used a seven-step scientific method, but he could only identify five of the seven steps. (RR III 280). He could not explain the methodology used nor could he explain what National Fire Protection Standard is. (RR III 282).

Finally, the State called Ramon Menchaca, a Houston firefighter who inspected the fire on behalf of the home insurance carrier. (RR IV 5). Menchaca testified that he is not an arson investigator. (RR IV 48). He testified that Jody had informed him that they had been having problems with the breaker tripping the light fixture to the light in the closet. (RR IV 37). Menchaca stated that he did not look into this statement, because he had already completed his investigation for the insurance company and eliminated the light fixture as a potential cause of the fire during his visual inspection. (RR IV 37). Menchaca testified that he followed the National Fire Protection Standard 921 best practices and collected samples for testing. (RR IV 59-60). The samples Menchaca collected for testing included two floor debris samples, the light fixture form the closet, the wall outlet from the closet and an exemplar light from the laundry room. (RR IV 52). He

7

recommended the insurance company test the samples in order to find out what happened for sure. (RR IV 51-52). The insurance company declined. (RR IV 53).

Even though Menchaca knew there was an on-going criminal investigation, and also knew that somebody had been arrested in the case, the samples taken were not kept. (RR IV 53).

## ARGUMENT AND AUTHORITIES

## APPELLANT'S FIRST POINT OF ERROR (Restated)

> Whether a finding of guilt in an arson case constitutes error when the evidence is legally insufficient because it does not rise to the level of scientific reliability necessitated by the use of valid scientific methodology.

The evidence is insufficient to support the jury's finding that Jody Whelchel committed arson.

In reviewing the sufficiency of the evidence, the court is required to view the evidence in the light most favorable to the prosecution and determine if any rational trier of fact could find the elements of the offense beyond a reasonable doubt. *Chambers v. State*, 711 S.W.2d 240, 245 (Tex. Crim. App. 1986); *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2879, 62 L.Ed.2d 560 (1979); *Griffin v. State*, 614 S.W.2d 155 (Tex.Crim.App. 1981).

The Supreme Court held in *Jackson v. Virginia* that its previous "no evidence" test was "simply inadequate to protect against misapplications of the constitutional

8

standard of reasonable doubt" because "'[a] mere modicum of evidence may satisfy a 'no evidence' standard.'" *Jackson v. Virginia*, 443 U.S. at 320 (quoting *Jacobellis v. Ohio*, 378 U.S. 184, 202 (1964)(Warren, C.J., dissenting)). In *Brooks v. State, 323 S.W.3d 893 (Tex.Crim.App. 2010),* the Texas Court of Criminal Appeals held that the *Jackson v. Virginia*, 443 U.S. 307 (1979), standard for legal sufficiency is the "only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks*, 323 S.W.3d at 912.

The question, then, is whether the evidence in this case is legally sufficient, not whether there is some proof from which a conclusion of guilt could be drawn. If the evidence "gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence of the crime charged, then a reasonable jury must necessarily entertain a reasonable doubt." *Clark v. Procunier*, 755 F.2d 394, 396 (5th Cir. 1985). *See also Weaver v. State*, 96 Tex.Crim. 506, 258 S.W. 171 (1924); *Texas Employers Ins. Ass'n v. Goad*, 622 S.W.2d 477, 480 (Tex. App. — Tyler 1981, *no writ*); *See also United States v. Moreno*, 185 F.3d 465, 471 (5th Cir. 1999) *cert. denied*, 528 U.S. 1095 (2000)("While the jury is free to choose among reasonable constructions of the evidence, a verdict cannot be affirmed if it is based on circumstantial evidence that is as consistent with innocence as with guilt."); *United States v. D'Amato*, 39 F.3d 1249, 1256 (2nd Cir. 1994)(evidence "at least as

9

consistent with innocence as with guilt" insufficient to support a guilty verdict)(internal quotation marks omitted). *See also Draper v. United States*, 358 .S. 307, 323-324 (1959)(Douglas, J., dissenting)("The law goes far to protect the citizen. Even suspicious acts observed by ... officers may be as consistent with innocence as with guilt. That is not enough, for even the guilty may not be implicated on suspicion alone."). The due process clauses of the U. S. and Texas Constitutions protect a defendant against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 297 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). See also, *Richardson v. State*, 879 S.W.2d 874 (Tex. Crim. App. 1993).

Under *Jackson* and *Chambers, supra,* the appellate court must consider all of the evidence presented at trial, even if it was contradicted by other evidence. The State is required to affirmatively prove each element of the offense. *Gold v. State*, 736 S.W.2d 685 (Tex. Crim. App. 1987). If the evidence, when viewed in the light most favorable to the verdict or judgment, gives equal or nearly equal support to the theories of innocence and guilt, the evidence is insufficient. *Clark v. Procunier*, 755 F.2d 394, 396 (5th Cir. 1985).

10

An appellate court reviews the legal sufficiency of the evidence "by considering all of the evidence in the light most favorable to the prosecution" to determine whether any "rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 318-19 (1979). Evidence is legally insufficient when the "only proper verdict" is acquittal. *Tibbs v. Florida,* 457 U.S. 31, 41-42 (1982). The appellate court's role is that of a due process safeguard, ensuring only the rationality of the trier of fact's finding of the essential elements of the offense beyond a reasonable doubt. *Moreno v. State,* 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). Deference is given to the responsibility of the fact finder to fairly resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from the facts. *Williams v. State,* 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). But the appellate court must "ensure that the evidence presented actually supports a conclusion that the defendant committed" the criminal offense of which he is accused. *Id.*

In this case, the sufficiency of the evidence requires the evidence be scientifically valid. The State had the burden of proving beyond a reasonable doubt that appellant intentionally committed arson. (CR I 371). In order to convict appellant of arson, the State had the burden to prove beyond a reasonable doubt that, Jody Whelchel started a fire with the intent to destroy or damage any building,

11

habitation, or vehicle knowing that: (1) is insured against damage or destruction, (2) is subject to a mortgage or other security interest, or (3) has located within it property belonging to another.

The Court of Criminal Appeal has also acknowledged the great weight jurors place on scientific evidence, and that jurors tend to defer to an expert's credentials rather than content when the scientific opinions offered are complex:

> studies have shown that juror reliance on an expert's credentials is directly proportional to the complexity of the information represented: the more complex the information, the more the jury looks to the background, experience, and status of the expert himself rather than to the content of his testimony.

*Coble v. State*, 330 S.W.3d 253, 281 (Tex. Crim. App. 2010).

The Supreme Court acknowledged the double-edged character of scientific evidence which can both illuminate and confuse:

> Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it.

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595, 113 S. Ct. 2786.

While the Texas rules of evidence encourage the consideration of relevant and reliable scientific evidence pursuant to Rule 702, courts have also noted that judges are not well equipped to correctly evaluate difficult issues of science. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 599 (1993) (Rehnquist, C.J., and Stevens, J., concurring and dissenting) (*Daubert* factors involve

12

consideration of issues "far afield from the expertise of judges"); *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 318 (7th Cir. 1996) ("it is a daunting task for judges who do not have a scientific background (and most do not) to decide whether a scientist's testimony is real science or not"); *Kelly v. State*, 824 S.W.2d 568, 576 (Tex. Crim. App. 1992) (Clinton, J., dissenting) (expressing concern that incorrect decision admitting unreliable science will result in injustice and that Texas criminal justice system lacks procedures to meaningfully test scientific evidence).

The record reveals that each of the State's experts utilized his own experiences to make a visual inspection of the situs to form his hypothesis that the fire was incendiary. Samples were available for testing, yet no samples were tested. The State's experts made a conscientious and deliberate decision to formalize their hypotheses as the official finding that the fire was incendiary, ***without*** the support or verification of any scientific testing conducted to either prove or disprove the hypotheses. Without scientific testing, the hypothesis is, at best, an un-validated subjective theory. Without valid, objective scientific testing of the evidence, the evidence is insufficient and cannot sustain a conviction.

## APPELLANT'S SECOND POINT OF ERROR (Restated)

Whether a wife can be forced to testify against her husband under the victim's exception to the spousal privilege rule when the damaged property in question is their joint property, thereby rendering the trial

13

court's denial of the defendant's Motion to Invoke Spousal Privilege error.

Texas Rules of Appellate Procedure 44.2(b) provides that any non-constitutional error that does not affect substantial rights must be disregarded. A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State,* 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). In assessing the likelihood that the jury's decision was adversely affected by the error, the Court considers everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. *Motilla v. State,* 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). The Court may also consider the jury instructions, the State's theory, any defensive theories, closing arguments, voir dire, and whether the State emphasized the error. *Id.*

The spousal privilege rule has two parts, the first part deals with communications to the spouse which were intended to be kept private, and the second part is a privilege for the spouse not to be called as a witness at all. *Weaver v. State,* 855 S.W.2d 116, 119-20 (Tex. App.-Houston [14th Dist.] 1993). Texas Rules of Evidence 504(a), provides in pertinent part:

(a) Confidential communication privilege.

(1) Definition. A communication is confidential if it is made privately by any person to the person's spouse and it is not intended for disclosure to any other person.

(2) Rule of privilege. A person, whether or not a party, or the guardian or representative of an incompetent or deceased person, has a privilege during their marriage and afterwards to refuse to disclose and to prevent another from disclosing a confidential communication made to the person's spouse while they were married.

An exception to the rule exists when the spouse is a victim of the defendant.

In the instant matter, the State asserts that the wife (Dondee Whelchel) is the husband's (Jody Whelchel) victim because the house that he was is alleged to have started a fire in belonged to Dondee. (CR 11). The State forced Dondee to testify against her will by issuing a subpoena, and threatened Dondee that if she did not respond to the subpoena then a warrant for her arrest would be issued. (RR III 70-71). She testified that the house was their joint property (RR III 74). She further testified that on two instances that morning, during an argument, Jody told her that he was going to burn the house down (RR III 44, 49).

15

Dondee's forced testimony harmed her husband, Jody Whelcehel, because it was the only evidence provided by the State in its attempt to establish "intent" to commit arson. Without Dondee's forced testimony, the State would not have met its burden. As such, the trial court's denial of the defendant's Motion to Invoke Spousal Privilege constituted error, and that error had a substantial and injurious effect or influence in determining the jury's verdict.

## CONCLUSION

Appellant respectfully urges this Court to hold that the evidence is insufficient to support the jury's verdict of guilt and overturn the conviction. In the alternate, Appellant respectfully urges this Court to hold that the trial court erred when it denied Jody Whelchel's Motion to Invoke Spousal Privilege and remand the case to the lower court for action consistent with this holding.

Respectfully Submitted,

**Zell Wright Law Offices, PLLC**

By: _/s/ Dawn Zell Wright_____
**Dawn Zell Wright**
State Bar No. 24033498
812 Barrett Street
Richmond, Texas 77469
Tel: (832) 361-3291
Fax: (888) 897-3001
Email: zellwright@zwlaw.us

16

## <u>CERTIFICATE OF SERVICE</u>

On July 28, 2015, Appellant has faxed a copy of the foregoing instrument to

counsel for the State of Texas at:


John Harrity
Fort Bend County District Attorney's Office
301 Jackson Street
Richmond, Texas 77469-3108
Fax:  (281) 238-3366


            */s/ Dawn Zell Wright*
            **Dawn Zell Wright**
            Attorney for Jody Whelchel
            SBN 24033498
            812 Barrett Street
            Richmond, Texas 77469
            Tel: (832) 361-3291
            Fax: (888) 897-3001
            Email: zellwright@zwlaw.us